[No. C040139. Third Dist. Dec. 12, 2002.]

CALIFORNIANS AGAINST WASTE, Plaintiff and Respondent, v.
DEPARTMENT OF CONSERVATION et al., Defendants and Appellants.

**COUNSEL**

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Ellen M. Peter

and William D. Cunningham, Deputy Attorneys General, for Defendants and Appellants.

Law Offices of Thomas H. Mabie and Thomas H. Mabie for Glass Packaging Institute and Beer Institute as Amici Curiae on behalf of Defendants and Appellants.

Robert J. Achermann for California/Nevada Soft Drink Association as Amicus Curiae on behalf of Defendants and Appellants.

Remy, Thomas & Moose, James G. Moose and Ashle T. Crocker for Plaintiff and Respondent.

## OPINION

CALLAHAN, J.—In 1986, the Legislature adopted the California Beverage Container Recycling and Litter Reduction Act (Pub. Resources Code, § 14500 et seq.) (the Act) to encourage large-scale recycling of used beverage containers through a program of financial incentives. (§ 14501.)[1] Monies collected by the Department of Conservation (Department) are deposited in the California Beverage Container Recycling Fund (the Fund). (§§ 14512.7, 14580, subd. (a).) The Department pays processors, drop-off or collection programs, curbside programs, and recycling centers a "processing payment" when the scrap value of the particular type of beverage container is insufficient to cover the cost of recycling. (§§ 14518.5, 14575, subds. (a) & (b).)[2] Processing payments are funded in part by "processing fees" paid to the Department by beverage manufacturers. (§§ 14518.4, 14575, subds. (b), (e), (f) & (h), 14581, subd. (a)(6)(A).) "This fee is designed to make the beverage container industry responsible for internalizing the cost of recycling the containers they manufacture." (Cal. Dept. of Conservation, The Annual Processing Fee Rep. (1991) p. 2.)

Following 1999 amendments to section 14575 (Stats. 1999, ch. 815, § 32; Stats. 1999, ch. 817, §§ 6 & 7), the Department changed the way it calculated the processing fee. Californians Against Waste (CAW), a nonprofit

---

[1] Undesignated statutory references are to the Public Resources Code.

[2] Section 14518.5 defines "processing payment" as "an amount paid to processors, dropoff or collection programs, curbside programs, and recycling centers by the department pursuant to subdivision (a) of Section 14573 and subdivision (a) of Section 14573.5 when the department determines that the scrap value being offered by container manufacturers, beverage manufacturers, or willing purchasers for a particular container material is insufficient to insure the economic recovery of the container type at the minimum number of recycling centers or locations required pursuant to Section 14571. The processing payment shall be determined by the department pursuant to Section 14575."

corporation that promotes market-based waste-reduction and recycling policies, challenged the Department's reading of section 14575. CAW maintained the Department was setting processing fees too low, contrary to the language and intent of the Act as amended. The trial court granted CAW's petition for writ of mandate, finding that the Department's processing fee calculation employed a "recycling factor" not specifically included in the statute.

On appeal, the Department contends the plain language of the statute supports the Department's formula for calculating the processing fee paid by beverage manufacturers. It argues the approach urged by CAW and adopted by the trial court is "patently absurd" because it "would . . . lead to the creation of surplus funds in accounts unavailable for any of the salutory purposes of the Act."

██ The interpretation of section 14575 presents a question of law, which we review de novo. (*County of Los Angeles v. Superior Court* (1993) 18 Cal.App.4th 588, 594 [22 Cal.Rptr.2d 409].) ██ Having considered the plain language of section 14575, and its relationship to the Act as a whole, we agree with the trial court that the Department's reading of section 14575 is erroneous. We therefore affirm the judgment.

## I

### *Principles of Statutory Construction*

The Department describes the issue on appeal simplistically as follows: "Does the language of Public Resources Code section 14575, and specifically subdivision (b), require the Department to calculate the Processing Fee under the Container Recycling Act on a containers *returned* or a containers *sold* basis?" CAW is more precise, explaining that "[t]he parties' disagreement concerns whether processing fees should be based on a portion of the average processing payment per container (or per ton) levied on every container *sold*, or whether they should be based instead on annual projections as to the total amount of processing payments that the Department anticipates disbursing to recyclers in an upcoming calendar year."

██ The court's task is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672] (*Select Base Materials*).) "Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'" (*Ibid.*)

The interpretation of a statute may involve up to three steps, as outlined in *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233 [8 Cal.Rptr.2d 298] (*Halbert's Lumber*). "First, a court should examine the actual language of the statute. [Citations.] Judges, lawyers and laypeople all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent. *More significantly, it is the language of the statute itself that has successfully braved the legislative gauntlet.* It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.'

"In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning [citations].

"*If the meaning is without ambiguity, doubt, or uncertainty, then the language controls.* [Citations.] There is nothing to 'interpret' or 'construe.' [Citations.]

"But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. [Citations.]

"The final step—and one which we believe should only be taken when the first two steps have failed to reveal clear meaning—is to apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations], in accord with common sense and justice, and to avoid an absurd result [citations]." (*Halbert's Lumber, supra,* 6 Cal.App.4th at pp. 1238-1240, italics added.)

██ Our analysis begins and ends with the examination of the language of section 14575 and related provisions of the Act.

## II

### *Relevant Provisions of the Act*

The Legislature included the following findings and declarations when it adopted the Act in 1986:

"(a) Experience in this state and others demonstrates that financial incentives and convenient return systems ensure the efficient and large-scale recycling of beverage containers. Accordingly, it is the intent of the Legislature to encourage increased, and more convenient, beverage container redemption opportunities for all consumers. These redemption opportunities shall consist of dealer and other shopping center locations, independent and industry operated recycling centers, curbside programs, nonprofit dropoff programs, and other recycling systems that assure all consumers, in every region of the state, the opportunity to return beverage containers conveniently, efficiently, and economically. [¶] . . . [¶]

"(d) It is the intent of the Legislature to ensure that every container type proves its own recyclability. [¶] . . . [¶]

"(f) The purpose of this chapter is to create and maintain a marketplace where it is profitable to establish sufficient recycling centers and locations to provide consumers with convenient recycling opportunities through the establishment of minimum redemption values, bonuses, processing fees, and, through the proper application of these elements, to enhance the profitability of recycling centers, recycling locations, and other beverage container recycling programs.

"(g) The responsibility to provide convenient, efficient, and economical redemption opportunities rests jointly with manufacturers, distributors, dealers, recyclers, processors, and the Department of Conservation.

"(h) It is the intent of the Legislature, in enacting this division, that all empty beverage containers redeemed shall be recycled, and that the responsibilities and regulations of the department shall be determined and implemented in a manner which favors the recycling of redeemed containers, as opposed to their disposal." (Stats. 1986, ch. 1290, § 2, p. 4540.)

As we explained, beverage manufacturers pay the Department processing *fees* to partially offset the processing *payments* made by the Department to recycling centers. (§§ 14518.4, 14518.5.) With exceptions irrelevant to this appeal, "every beverage manufacturer shall pay to the department the applicable processing fee for each container sold or transferred to a distributor or dealer . . . ." (§ 14575, subd. (h)(1).)

The Fund includes separate processing fee accounts for each beverage container material type for which the Department calculates a processing payment and processing fee pursuant to section 14575. (§ 14581, subd. (a)(6)(A).) The Department deposits into those accounts the following funds:

"(i) All amounts paid as processing fees for each beverage container material type pursuant to subdivision (g) of Section 14575" and "(ii) Funds equal to pay 75 percent of the processing payments established in subdivision (b) of Section 14575, in order to reduce the processing fee to the level provided in subdivision (f) of Section 14575." (§ 14581, subd. (a)(6)(A).) Funds deposited in each processing fee account are continuously appropriated to the Department for the specific purposes of "making processing payments, and reducing processing fees, pursuant to Section 14575." (§ 14581, subd. (a)(6)(B).)

The formula for calculating processing fees—the question before us in this appeal—is set forth in section 14575, subdivisions (b), (e), (f), and (h). Section 14575, subdivision (e) provides: "Except as specified in subdivision (f), the actual processing fee paid by beverage manufacturers shall equal 65 percent of the processing payment calculated pursuant to subdivision (b)."

Section 14575, subdivision (f) reduces the processing fees when surplus funds are available in each material processing fee account. Subdivision (f) specifically provides: "The department, consistent with Section 14581 and subject to the availability of funds, shall reduce the processing fee paid by beverage manufacturers pursuant to subdivision (e) by expending funds in each material processing fee account, established pursuant to subparagraph (A) of paragraph (6) of subdivision (a) of Section 14581, so that the amount of the processing fee equals 25 percent of the processing payment calculated pursuant to subdivision (b)."

Whether the Department applies the 65 percent factor under section 14575, subdivision (e), or a 25 percent factor under subdivision (f) when funds are available, the statute directs the Department to multiply the processing *payment* by the appropriate percentage to determine the processing *fee*. Consequently, the Department must determine the processing payment (PP) for each beverage container type before calculating the processing fee (PF).

Section 14575, subdivision (b) describes how the processing payment is calculated. Under that subdivision, "[t]he processing payment shall be at least equal to the difference between the scrap value [SV] offered to a statistically significant sample of recyclers by willing purchasers, and except for the initial calculation made pursuant to subdivision (d), the sum of both of the following:

"(1) The actual cost for certified recycling centers, excluding centers receiving a handling fee, of receiving, handling, storing, transporting, and

maintaining equipment *for each container sold for recycling* [ACR] or, only if the container is not recyclable, the actual cost of disposal [ACD], calculated pursuant to subdivision (c). The department shall determine the statewide weighted average cost to recycle each beverage container type, which shall serve as the actual recycling costs . . . .

"(2) A reasonable financial return for recycling centers [RFR]." (Italics added.)

## III

### Calculating the Processing Payment and Processing Fee

The trial court observed that "the formula [under section 14575] is actually drafted in a way that is clear in this sense that you could write an equation by reading this statute." We agree that the plain language of section 14575, subdivision (b) can be translated into the following two equations:

1. $((\text{ACR or ACD}) + \text{RFR}) - \text{SV} = \text{PP}$

2. $(65\% \text{ or } 25\%) \times \text{PP} = \text{PF}$

The Department applied the first equation correctly in setting the 2000 processing payment. Looking at the January 1, 2000, calculation for glass as an example, the per ton processing payment of $67.57 equaled the $85.19 cost of recycling per ton minus the $17.62 in scrap value per ton. This resulted in a per container processing payment of $0.01807.

However, the Department did not apply the second equation in accordance with the language of section 14575. Under the second equation as set forth above, the per container processing fee for glass should be $0.00452, that is, 25 percent of the per container processing fee of $0.01807. It is unclear whether the Department recognized that section 14575, subdivision (b)(1) as amended called for a sales-based rather than returns-based calculation. In any event, the Department created a third and different equation by factoring in the estimated glass return rate of 60 percent: $\text{PP} \times 60\% \times 25\% = \text{PF}$.[3] Under the new equation, it set the per container processing fee at $0.00271.

## IV

### The Language of Section 14575

Section 14575, subdivision (b)(1) directs the Department to use the "actual cost [of recycling] for each container sold for recycling" in determining

---

[3]The trial court referred to the additional factor as the "recycling factor."

the processing payment owed by beverage manufacturers for each beverage container type. The Department argues that the "literal language [of section 14575] discloses a formula for calculating Processing Fees based on *actual* (average) recycling costs—costs that can only be established by looking at containers actually returned or recycled not all containers sold." It explains that "[b]y looking at actual levels of recycling (i.e., *the number of containers returned*) and actual costs of recycling, the Department presently calculates the payments appropriate to offset the real and unrecovered costs incurred by the recycling industry . . . clearly what the Legislature intended . . . ." We conclude that the plain language of this provision contemplates a sales-based formula, not the returns-based formula challenged by CAW.

The Department's argument ignores the presence of the phrase "for each container sold" in the statutory language at issue. Reading the first sentence of section 14575, subdivision (b)(1) in its entirety—and placing the words "for recycling" next to "actual cost," the words they modify—the clear import is that the Department must factor into its equation the "actual cost for [recycling] each container sold." We conclude there is no statutory authorization for the Department's use of the estimated return rate or "recycling factor" to discount processing payment and thereby effectuate a returns-based system for calculating the processing fee. Given our conclusion that the plain meaning of section 14575, subdivision (b) supports CAW's reading of the statute, we need not pursue the second and third steps in statutory interpretation set forth in *Halbert's Lumber, supra*, 6 Cal.App.4th at page 1238.

The Department nonetheless argues that CAW's interpretation will lead to absurd and unintentional consequences. Specifically, it contends the higher processing fees assessed under a sales-based formula will result in large, "non-disbursable" surpluses in the processing fee accounts for each beverage container type. CAW acknowledges that surpluses will accrue, but disagrees the result is "absurd." Citing section 14575, subdivisions (e) and (f), CAW argues that "creation of temporary surpluses within the processing fee accounts will help perpetuate low processing fees representing only 25 percent of processing payments, and will forestall the day when processing fees will rise to a higher percentage of 65 percent."

As we explained, courts determine legislative intent through statutory language in the first instance. (See *Select Base Materials, supra*, 51 Cal.2d at p. 645, and *Halbert's Lumber, supra*, 6 Cal.App.4th at p. 1238.) Since 1986, the Legislature has balanced complex and competing interests to develop

workable financial incentives that serve the stated goals of the California Beverage Container Recycling and Litter Reduction Act. (See Stats. 1986, ch. 1290, § 2, pp. 4561-4563; Stats. 1989, ch. 1339, § 39, pp. 5522-5527; Stats. 1990, ch. 1274, § 9, pp. 5422-5425; Stats. 1991, ch. 908, § 4, pp. 4022-4027; Stats. 1992, ch. 1266, § 18, pp. 6032-6035; Stats. 1995, ch. 624, § 25, pp. 4625-4629; Stats. 1999, ch. 1, § 2; Stats. 1999, ch. 815, § 32; Stats. 1999, ch. 817, §§ 6 & 7.) If the language of the 1999 amendments to section 14575 does not reflect the intent of the Legislature, it is up to the Legislature to change it. Meanwhile, the Department must comply with the statute as amended.

## DISPOSITION

The judgment is affirmed.

Raye, Acting P. J., and Robie, J., concurred.