[No. B184680. Second Dist., Div. Five. Feb. 7, 2006.]

FERIAL SHAMSIAN, Plaintiff and Appellant, v.
DEPARTMENT OF CONSERVATION et al., Defendants and Respondents.

622

## Counsel

Law Offices of Arnold G. Regardie and Arnold G. Regardie for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, William S. Abbey and Jennifer F. Novak, Deputy Attorneys General, for Defendants and Respondents.

Orrick, Herrington & Sutcliffe, D. Barclay Edmundson, Frank D. Rorie; Skadden, Arps, Slate, Meagher & Flom, Thomas J. Nolan and Robert J. Herrington for Defendants and Respondents Anheuser-Busch, Inc., and Miller Brewing Company.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, Ferial Shamsian, appeals from a judgment dismissing her first amended complaint and denying her mandate petition as to defendants: the Department of Conservation (department); two individuals—Darryl W. Young, department director, and Jim Ferguson, assistant director of the California Beverage Container Recycling Program; and two corporations—Anheuser-Busch, Inc., and Miller Brewing Company (the corporate defendants). Plaintiff alleged the defendants had failed to provide convenient, economical, and efficient beverage container redemption opportunities for California consumers as required by section 14501, subdivision (g) of the California Beverage Container Recycling and Litter Reduction Act, Public Resources Code[1] section 14500 et seq. (the act).

Plaintiff raises two contentions she claims are dispositive of this appeal. To begin with, plaintiff asserts defendants have a mandatory duty pursuant to section 14501, subdivision (g) such that a private right of action challenging their alleged inaction may be pursued by her. The trial court ruled there was no mandatory duty created by section 14501, subdivision (g). Also, plaintiff argues she can pursue her Business and Professions Code section 17200 unfair competition claims. The trial court ruled equitable abstention principles barred plaintiff's unfair competition claims. We agree with the trial court on both counts and affirm the judgment.

## II. BACKGROUND

### A. *The Act*

The Legislature adopted the act in 1986. (Stats. 1986, ch. 1290, § 2, pp. 4539–4568.) The act creates a comprehensive administrative scheme designed to encourage and facilitate the large-scale recycling of used beverage

---

[1] All further statutory references are to the Public Resources Code except where otherwise noted.

containers. The act establishes a department administered program designed to achieve stated recycling goals through a complex arrangement of financial incentives. The act attempts to balance the competing interests of the varied participants in the beverage container and recycling industries. It requires for its success cooperation among manufacturers, distributors, recycling centers, supermarkets, and consumers. Additionally, it attempts to make recycling convenient for the consuming public. (§ 14500 et seq.; see *Californians Against Waste v. Department of Conservation* (2002) 104 Cal.App.4th 317, 325–326 [127 Cal.Rptr.2d 905].)

The act is administered and enforced by the department. (§ 14530; see also, e.g., §§ 14538, 14539.) The department is authorized to adopt regulations. (§ 14536; Cal. Code Regs., tit. 14, § 2000 et seq.) A violation of the act is an infraction punishable by a fine (§ 14591, subd. (a)) or, in the case of fraud, by a fine as well as possible imprisonment, potentially in the state penitentiary. (§ 14591, subd. (b).) The department is authorized, among other things, to: assess civil penalties for violations of the act (§ 14591.1) including unfair recycling competition (§ 14588 et seq.); take disciplinary action (§ 14591.2); seek restitution of money illegally paid (§ 14591.4); issue cease and desist orders (§ 14591.6, subd. (a)); and request that the Attorney General seek injunctive relief. (§ 14591.6, subd. (e).) Penalties, restitution and other remedies imposed by the department can be enforced by means of a judgment having the same force and effect as a judgment in a civil action. (§ 14591.5.)

The Legislature found and declared in section 14501 as follows: "(a) *Experience in this state and others demonstrates that financial incentives and convenient return systems ensure the efficient and large-scale recycling of beverage containers. Accordingly, it is the intent of the Legislature to encourage increased, and more convenient, beverage container redemption opportunities for all consumers. These redemption opportunities shall consist of dealer and other shopping center locations, independent and industry operated recycling centers, curbside programs, nonprofit dropoff programs, and other recycling systems that assure all consumers, in every region of the state, the opportunity to return beverage containers conveniently, efficiently, and economically.* [¶] (b) California grocery, beer, soft drink, container manufacturing, labor, agricultural, consumer, environmental, government, citizen, recreational, taxpayer, and recycling groups have joined together in calling for an innovative program to generate large-scale redemption and recycling of beverage containers. [¶] (c) *This division establishes a beverage container recycling goal of 80 percent,* and when the redemption rate for any one type of beverage container falls below 65 percent, this division provides for an increased refund value. [¶] (d) It is the intent of the Legislature to ensure that every container type proves its own recyclability. [¶] (e) It is the intent of the Legislature to make redemption and recycling convenient to consumers, and the Legislature hereby urges cities and counties, when

exercising their zoning authority, to act favorably on the siting of multimaterial recycling centers, reverse vending machines, mobile recycling units, or other types of recycling opportunities, as necessary for consumer convenience, and the overall success of litter abatement and beverage container recycling in the state. [¶] (f) The purpose of this division is to create and maintain a marketplace where it is profitable to establish sufficient recycling centers and locations to provide consumers with convenient recycling opportunities through the establishment of minimum refund values and processing fees and, through the proper application of these elements, to enhance the profitability of recycling centers, recycling locations, and other beverage container recycling programs. [¶] (g) *The responsibility to provide convenient, efficient, and economical redemption opportunities rests jointly with manufacturers, distributors, dealers, recyclers, processors, and the Department of Conservation.* [¶] (h) It is the intent of the Legislature, in enacting this division, that all empty beverage containers redeemed shall be recycled, and that the responsibilities and regulations of the department shall be determined and implemented in a manner which favors the recycling of redeemed containers, as opposed to their disposal. [¶] (i) Nothing in this division shall be interpreted as affecting the current business practices of scrap dealers or recycling centers, except that, to the extent they function as a recycling center or processor, they shall do so in accordance with this division [¶] (j) The program established by this division will contribute significantly to the reduction of the beverage container component of litter in this state." (Italics added.)

Section 14571, subdivision (a) provides: "Except as otherwise provided in this chapter, there shall be at least one certified recycling center or location within every convenience zone which accepts and pays the refund value, if any, at one location for all types of empty beverage containers . . . ." "Convenience zone" is defined in section 14509.4, subdivision (a) as, "The area within a one-half mile radius of a supermarket." However, the department has discretion under specified circumstances to increase the size of a convenience zone in a rural region to within a three-mile radius of a supermarket. (§ 14509.4, subd. (b)(1) & (2).) The department also has discretion to grant an exemption from the section 14571 requirement of one certified recycling center or location within every convenience zone. (§ 14571.8.) Section 14571.8, subdivision (b) states in part: "The director may grant an exemption from the requirements of Section 14571 for an individual convenience zone only after the department solicits public testimony on whether or not to provide an exemption from Section 14571. The solicitation process shall be designed by the department to ensure that operators of

recycling centers, dealers, and members of the public in the jurisdiction affected by the proposed exemption are aware of the proposed exemption."[2]

## B. *The First Amended Complaint and the Mandate Petition*

Plaintiff's first amended complaint and mandate petition were brought "individually and on behalf of all others similarly situated." Plaintiff's central allegation was that defendants were jointly responsible for providing convenient, economical, and efficient beverage container redemption opportunities for California consumers pursuant to section 14501, subdivision (g) of the act, but had failed to do so. Only the first, sixth, ninth, tenth, and eleventh causes of action of the first amended complaint concerned the present defendants. In her first cause of action, plaintiff sought a writ of mandate to compel compliance with defendants' "mandatory statutory joint duty and responsibility to provide convenient, efficient, and economical redemption opportunities . . ." as required by section 14501, subdivision (g) of the act. Plaintiff sought an order "that all convenience zones include within its [*sic*] boundaries at least one recycling center" as required by section 14571. In her sixth cause of action, plaintiff sought restitution and disgorgement of profits as against defendants, other than the department, for engaging in unfair and unlawful business practices in violation of Business and Professions Code section 17200. Plaintiff alleged defendants had "jointly failed to implement the [a]ct by not providing convenient, efficient, and economical redemption opportunities to California consumers . . . in sufficient numbers to reach a recycling rate of 80 [percent], in violation of [section] 14501[, subdivision] (c) [establishing the 80 percent recycling goal] and [section] 14501[, subdivision] (g) of the [a]ct [setting forth the need for redemption opportunities]." The

---

[2] Section 14571.8, subdivision (b) states in full: "The director may grant an exemption from the requirements of Section 14571 for an individual convenience zone only after the department solicits public testimony on whether or not to provide an exemption from Section 14571. The solicitation process shall be designed by the department to ensure that operators of recycling centers, dealers, and members of the public in the jurisdiction affected by the proposed exemption are aware of the proposed exemption. After evaluation of the testimony and any field review conducted, the department shall base a decision to exempt a convenience zone on one, or any combination, of the following factors: [¶] (1) The exemption will not significantly decrease the ability of consumers to conveniently return beverage containers for the refund value to a certified recycling center redeeming all material types. [¶] (2) Except as provided in paragraph (5), the nearest certified recycling center is within a reasonable distance of the convenience zone being considered from exemption. [¶] (3) The convenience zone is in the area of a curbside recycling program that meets the criteria specified in Section 14509.5. [¶] (4) The requirements of Section 14571 cannot be met in a particular convenience zone due to local zoning or the dealer's leasehold restrictions for leases in effect on January 1, 1987, and the local zoning or leasehold restrictions are not within the authority of the department and the dealer. However, any lease executed after January 1, 1987, shall meet the requirements specified in subdivision (a). [¶] (5) The convenience zone has redeemed less than 60,000 containers per month for the prior 12 months and, notwithstanding paragraph (2), a certified recycling center is located within one mile of the convenience zone that is the subject of the exemption."

ninth cause of action alleged the department had "wrongfully and unlawfully failed to carry out its statutory duty to provide convenient, efficient, and economical redemption opportunities . . . as required by the [a]ct, including but not limited to" section 14501, subdivision (g). Plaintiff sought imposition of a constructive trust on unspent cash redemption value funds (nonrefunded beverage container deposits) in the department's possession. The tenth cause of action, for an accounting, was brought against the department for violating section 14501, subdivision (g) of the act. The eleventh cause of action sought declaratory relief "as to the interpretation, application and effect of the [a]ct, including but not limited to [section] 14501[, subdivision] (g), and the rights, duties and responsibilities of the parties with respect thereto."

Plaintiff's separately filed Code of Civil Procedure section 1085 mandate petition paralleled her first amended complaint. The first cause of action sought a writ of mandate to compel compliance with the "mandatory statutory duties" imposed by the act "including but not limited to" section 14501, subdivision (g). Plaintiff requested an order "commanding [defendants] to comply with the [act], specifically [section] 14501[, subdivision] (g), by providing convenient, efficient, and economical redemption opportunities for consumers . . . , including but not limited to . . ." requiring at least one recycling center in every convenience zone. The remaining causes of action as against the present defendants were: the sixth, for restitution and disgorgement of profits against the corporate defendants for engaging in unfair and unlawful business practices in violation of Business and Professions Code section 17200, "in that they have jointly failed to implement the [a]ct by providing convenient, efficient, and economical redemption opportunities to California beverage container consumers . . . in adequate numbers to reach a recycling rate of 80 [percent], in violation of [section] 14501[, subdivision] (g) of the [a]ct"; the ninth for imposition of a constructive trust against unredeemed cash redemption value funds in the department's possession as a result of its failure to provide convenient, efficient, and economical redemption opportunities as required by the act including section 14501, subdivision (g); the tenth against the department for an accounting of unredeemed cash redemption value funds wrongfully retained because plaintiff and other consumers had insufficient redemption opportunities; and the eleventh for "a judicial declaration as to the interpretation, application and effect of the [a]ct, including but not limited to [section] 14501[, subdivision] (g) . . . ." Plaintiff's eleventh cause of action alleged section 14501, subdivision (g) was not being "adequately" implemented.

### C. *The Trial Court's Ruling*

The parties agreed the trial court would determine certain threshold issues of law regarding the viability of plaintiff's claims for relief "in lieu of

generalized demurrers" to the first amended complaint. The trial court concluded: there was no private right of action or mandatory " 'duty' of compliance" under the act that would support plaintiff's claims against defendants; plaintiff had no standing to seek a writ of mandate under Code of Civil Procedure section 1085; the act vested discretion in the department to develop a recycling program consistent with legislative goals and there was no ministerial act that plaintiff could compel; there was no duty under the act and therefore no basis for an unlawful business practices claim under Business and Professions Code section 17200 et seq.; and equitable abstention was appropriate in light of the comprehensive administrative scheme created to address beverage container recycling.

## III.  DISCUSSION

### A.  *Standards of Review*

█   The trial court's ruling was in the nature of a demurrer dismissal. Therefore, consistent with the standard of review on appeal from an order sustaining a demurrer without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In addition, whether section 14501, subdivision (g) imposes a mandatory duty or supports a private right of action is a question of statutory interpretation and of law for the court. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499 [93 Cal.Rptr.2d 327, 993 P.2d 983]; *Creason v. Department of Health Services* (1998)18 Cal.4th 623, 631 [76 Cal.Rptr.2d 489, 957 P.2d 1323].) We exercise our independent judgment in resolving that issue. (*City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 949 [22 Cal.Rptr.3d 518, 102 P.3d 904] [Code Civ. Proc. § 1085 mandate petition]; *McIntosh v. Aubry* (1993) 14 Cal.App.4th 1576, 1583–1584 [18 Cal.Rptr.2d 680] [same].) We apply the following standard of statutory review described by our Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; accord, *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

## B. *Mandatory Duty or Private Right of Action*

The first important question before us is whether the act imposes a mandatory duty on the defendants "to provide convenient, efficient, and economical redemption opportunities" (§ 14501, subd. (g)), the breach of which obligation creates a private right of action by plaintiff. With respect to a public entity such as the department, Government Code section 815.6 allows an exception to governmental immunity and creates a private right of action where there is a mandatory duty to protect against the risk of a particular kind of injury. (Gov. Code, § 815.6; *Haggis v. City of Los Angeles, supra,* 22 Cal.4th at pp. 498–500; *Creason v. Department of Health Services, supra,* 18 Cal.4th at pp. 630–631; *Nunn v. State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846].) The effect of Government Code section 815, subdivision (a) on the right to sue a public entity was described in *Creason v. Department of Health Services, supra,* 18 Cal.4th at pages 630–631: "The California Tort Claims Act provides that a public entity is not liable for injury arising from an act or omission except as provided by statute. (Gov. Code, § 815, subd. (a); see *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809 [205 Cal.Rptr. 842, 685 P.2d 1193].) Under Government Code section 815.6, as we have construed it, 'a public entity is liable for an injury proximately caused by its failure to discharge a mandatory duty designed to protect against the risk of a particular kind of injury. . . .' (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 904 [136 Cal.Rptr. 251, 559 P.2d 606]; see *Washington v. County of Contra Costa* (1995) 38 Cal.App.4th 890, 896 [45 Cal.Rptr.2d 646]; *State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914].) Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts. (*Nunn v. State of California, supra,* 35 Cal.3d at p. 624.)" If a statute does not require that a "particular action" be taken, Government Code section 815.6 does not create the right to sue a public entity. (*Haggis v. City of Los Angeles, supra,* 22 Cal.4th at pages 498–499; *Creason v. Department of Health Services, supra,* 18 Cal.4th at p. 631.) In *Creason,* the Supreme Court emphasized the statutory scheme at issue, the Hereditary Disorders Act, required the Department of Health Services select accurate standards for testing for and reporting possible congenital hypothyroidism. (*Creason v. Department of Health Services, supra,* 18 Cal.4th at p. 626.) The Supreme Court described the scope of discretion under the Hereditary Disorders Act as follows: "[T]he statutory scheme at issue here makes reasonably clear that the state is given substantial *discretion* in formulating and reporting appropriate testing standards for hypothyroidism, although the Legislature has specified certain general principles to guide the exercise of that discretion. Moreover, although the Hereditary Disorders Act included some mandatory language in describing the state's obligations, the

act's provisions disclose no legislative intent to confer a private right of action for the state's breach of its statutory duties." (*Id.* at p. 631.)

The Supreme Court has described the nature of the duty that must be present in order for there to be statutory liability by a public entity: "[S]ection 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. (*Morris v. County of Marin*[, *supra*,] 18 Cal.3d [at pp.] 907, 910.) It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion. (*Creason v. Department of Health Services*[, *supra*,] 18 Cal.4th [at pp.] 631–633 . . . .)" (*Haggis v. City of Los Angeles, supra,* 22 Cal.4th at p. 498; see *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 639 [125 Cal.Rptr.2d 637].) (Plaintiff does not contend she has a cause of action against the corporate defendants in the absence of a duty such as would support a claim against the department.)

■ Plaintiff concedes the Legislature did not grant an explicit right to sue to enforce the act. But our Supreme Court has held the absence of an "*express* right to sue" is not dispositive. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) Plaintiff argues the clear language of section 14501, subdivision (g) imposes a joint mandatory duty on all of the defendants to provide convenient, efficient, and economical redemption opportunities throughout the state. We agree with the trial court that a plain reading of section 14501, subdivision (g) reveals it is a statement of legislative intent. Section 14501 is unofficially entitled "Legislative Findings and Declarations." It begins with the phrase, "The Legislature finds and declares as follows . . . ." (§ 14501.) As noted previously, section 14501, subdivision (g), which is part of the legislative findings of the act, simply states, "The responsibility to provide convenient, efficient, and economical redemption opportunities rests jointly with manufacturers, distributors, dealers, recyclers, processors, and the Department of Conservation." With these words, the Legislature conveyed its intent that the responsibility to provide redemption opportunities would rest not just with the department but with all of the principal participants in the beverage container recycling scheme. (§ 14501, subd. (g).) However, as the Courts of Appeal have repeatedly held, a statement of legislative intent may not give rise to a mandatory duty. (*County of Los Angeles v. Superior Court, supra,* 102 Cal.App.4th at p. 639; *MacDonald v. State of California* (1991) 230 Cal.App.3d 319, 330 [281 Cal.Rptr. 317]; *Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 642–643 [232 Cal.Rptr. 61]; *Ibarra v. California Coastal Com.* (1986) 182 Cal.App.3d 687, 694 [227 Cal.Rptr. 371].) The statement of legislative intent in section 14501,

subdivision (g) does not impose a mandatory duty the breach of which gives rise to a private right of action.

At oral argument, plaintiff's counsel asserted defendants' mandatory duty also arose from section 14501, subdivision (a), which provides: "Experience in this state and others demonstrates that financial incentives and convenient return systems ensure the efficient and large-scale recycling of beverage containers. Accordingly, it is the intent of the Legislature to encourage increased, and more convenient, beverage container redemption opportunities for all consumers. These redemption opportunities shall consist of dealer and other shopping center locations, independent and industry operated recycling centers, curbside programs, nonprofit dropoff programs, and other recycling systems that assure all consumers, in every region of the state, the opportunity to return beverage containers conveniently, efficiently, and economically." The foregoing analysis applies with equal force to section 14501, subdivision (a). For the reasons discussed above, with respect to subdivision (g), section 14501, subdivision (a) is also a statement of legislative intent. The statement of legislative intent in section 14501, subdivision (a) does not impose a mandatory duty.

■ Plaintiff asserts a private right of action was intended by the Legislature's enactment of section 14530.6, which provides: "Upon the request of the department, the Attorney General shall represent the department and the state in litigation concerning affairs of the department." Plaintiff contends the Legislature clearly expected the department would be sued to enforce the act. We disagree. Section 14530.6 states only that the Attorney General is required to represent the department in litigation concerning its affairs. This is consistent, for example, with section 14591.6, subdivision (e), which authorizes the department to ask the Attorney General to seek injunctive relief on the department's behalf to restrain activity in violation of a department-issued cease and desist order. Nothing in the language of section 14530.6 suggests the Legislature intended to allow individuals such as plaintiff to sue the department to enforce the act.

Plaintiff relies on our Supreme Court's analysis in *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 440 [261 Cal.Rptr. 574, 777 P.2d 610], in holding that former Elections Code sections 302 and 304[3] authorized a private cause of action be brought to compel counties to design and implement voter

---

[3] In 1989, Elections Code section 302 provided: "(a) It is the intent of the Legislature that the election board of each county, in order to promote and encourage voter registrations, shall establish a sufficient number of registration places throughout the county, and outside the county courthouse, for the convenience of persons desiring to register, to the end that registration may be maintained at a high level. [¶] (b) It is also the intent of the Legislature that county clerks, in order to promote and encourage voter registrations, shall enlist the support and cooperation of interested citizens and organizations, and shall deputize as registrars qualified citizens in such a

outreach programs. The issue before the Supreme Court was whether under Elections Code section 304 only the Attorney General had the standing to bring suit to enforce the county registrar's obligation to implement voter outreach programs. The Supreme Court held that a private cause of action could be pursued by an entity other than the Attorney General and reasoned as follows: "First, the plain language of section 304 contains no limitation on the right of private citizens to sue to enforce the section. To infer such· a limitation would contradict our long-standing approval of citizen actions to require governmental officials to follow the law, expressed in our expansive interpretation of taxpayer standing (see *Harman* [*v. City and County of San Francisco* (1972)] 7 Cal.3d 150, 160 [101 Cal.Rptr. 880, 496 P.2d 1248]; *Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268 [96 Cal.Rptr. 42, 486 P.2d

---

way as to reach most effectively every resident of the county. The persons so deputized shall be permitted to register voters anywhere within the county, including at the places of residence of the persons to be registered, and the county clerk shall not deny deputy registrars the right to register voters anywhere in the county. [¶] (c) It is also the intent of the Legislature that non-English-speaking citizens, like all other citizens, should be encouraged to vote. Therefore, appropriate efforts should be made to minimize obstacles to registration by citizens who lack sufficient skill in English to register without assistance. [¶] (d) Where the county clerk finds that citizens described in subdivision (c) approximate 3 percent or more of the voting age residents of a precinct, or in the event that interested citizens or organizations provide information which the county clerk believes indicates a need for registration assistance for qualified citizens described in subdivision (c), the county clerk shall make reasonable efforts to recruit deputy registrars who are fluent in a language used by citizens described in subdivision (c) and in English. Such recruitment shall be conducted through the cooperation of interested citizens and organizations and through voluntarily donated public service notices in the media, including newspapers, radio, and television, particularly those media which serve the non-English-speaking citizens described in subdivision (c). Deputy registrars so appointed shall facilitate registration in the particular precincts concerned and shall have the right to register voters anywhere in the county. [¶] (e) In furtherance of the purposes of this section, the governing board of any county, city, city and county, district, or other public agency, may authorize and assign any of its officers or employees to become deputy registrars of voters and to register qualified citizens on any premises and facilities owned or controlled by such public agencies during the regular working hours of such officers or employees; provided, that with the exception of firemen, any compensation to which said officer or employee may be entitled in payment for the services of such officer or employee as a deputy registrar may be paid by the authority which appointed such officer or employee as a deputy registrar to the public agency which regularly employs such officer or employee. [¶] (f) It is the intent of the Legislature that no limitation be imposed on the number of persons appointed to act as deputy registrars of voters." (Stats. 1976, ch. 1275, § 12, pp. 5637–5638, repealed and reenacted at Stats. 1994, ch. 920, § 2, pp. 4710–4711 as Elec. Code, § 2103.) Elections Code section 304 provided in 1989: "It is the intent of the Legislature that voter registration be maintained at the highest possible level. The Secretary of State shall adopt regulations requiring each county to design and implement programs intended to identify qualified electors who are not registered voters, and to register such persons to vote. The Secretary of State shall adopt regulations prescribing minimum requirements for such programs. If the Secretary of State finds that a county has not designed and implemented a program meeting such prescribed minimum requirements, the Secretary of State shall design a program for such county and report the violation to the Attorney General." (Stats. 1976, ch. 1275, § 12, p. 5638, repealed and reenacted by Stats. 1994, ch. 920, § 2, pp. 4711–4712, as Elec. Code § 2105.)

1242]; *Wirin v. Parker* (1957) 48 Cal.2d 890, 894 [313 P.2d 844]), and our recognition of a 'public interest' exception to the requirement that a petitioner for writ of mandate have a personal beneficial interest in the proceedings (*Green v. Obledo* [(1981)] 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; *Bd. of Soc. Welfare v. County of L.A.* (1945) 27 Cal.2d 98, 100–101 [162 P.2d 627]). In the absence of either an express limitation on citizen standing or any indication of legislative intent to confer exclusive powers on the Attorney General, we decline to impose such a limitation on citizen actions to enforce section 304 and its accompanying regulations. (Cf. *People, etc. v. City of South Lake Tahoe* (E. D. Cal. 1978) 466 F.Supp. 527 [conferral of enforcement power on Attorney General not determinative of exclusivity question under California law].) [¶] Second, plaintiffs' action is not based solely on section 304. To the contrary, they rely principally on section 302, which authorizes county clerks to deputize citizens as deputy registrars. It cannot reasonably be maintained that, by enacting and providing for the enforcement of section 304—which mandates the adoption of outreach programs—the Legislature intended to preclude citizens from bringing actions to enforce the provisions of section 302, a preexisting statute that governs counties' deputization of voting registrars. Were we to accept County's contention, courts would be required to consider claims alleging violations of section 302 in isolation from closely related claims alleging violations of section 304 and its accompanying regulations. Considerations of judicial efficiency militate strongly against such a result." (*Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at pp. 440–441, fn. omitted.)

*Common Cause* is not authority for the proposition advanced by plaintiff that section 14501, subdivision (g) imposes a mandatory duty on defendants' part to provide the statutorily sufficient redemption program. The language in *Common Cause* relied upon by plaintiff here relates to whether Elections Code section 304 permitted the Attorney General to sue to require counties to engage in statutorily mandated voter outreach programs. (*Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at pp. 440–441.) No similar provision of law is present here. Because the issue presented before us is entirely different, *Common Cause* is not controlling authority on the mandatory duty issue. (*Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1278 [135 Cal.Rptr.2d 654, 70 P.3d 1067] [" ' "an opinion is not authority for a proposition not therein considered" ' "]; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1081 [130 Cal.Rptr.2d 892, 63 P.3d 979] [" ' "cases are not authority for propositions not considered" ' "].)

Plaintiff also relies on *Californians Against Waste v. Department of Conservation, supra,* 104 Cal.App.4th at pages 320–326. In *Californians Against Waste,* a nonprofit corporation sought a writ of mandate to compel the department to properly calculate statutory processing fees paid as a recycling incentive. (*Id.* at p. 320.) In *Californians Against Waste,* former Associate

Justice Conseuelo Maria Callahan identified the issue before the Court of Appeal thusly: "Following 1999 amendments to section 14575 (Stats. 1999, ch. 815, § 32; Stats. 1999, ch. 817, §§ 6 & 7), the Department [of Conservation] changed the way it calculated the processing fee. Californians Against Waste . . . , a nonprofit corporation that promotes market-based waste-reduction and recycling policies, challenged the Department's reading of section 14575. [Californians Against Waste] maintained the Department was setting processing fees too low, contrary to the language and intent of the Act as amended. The trial court granted [the] petition for writ of mandate, finding that the Department's processing fee calculation employed a 'recycling factor' not specifically included in the statute. [¶] On appeal, the Department contends the plain language of the statute supports the Department's formula for calculating the processing fee paid by beverage manufacturers. It argues the approach urged by [Californians Against Waste] and adopted by the trial court is 'patently absurd' because it 'would . . . lead to the creation of surplus funds in accounts unavailable for any of the salutary purposes of the Act.' [¶] The interpretation of section 14575 presents a question of law, which we review de novo. (*County of Los Angeles v. Superior Court* (1993) 18 Cal.App.4th 588, 594 [22 Cal.Rptr.2d 409].) Having considered the plain language of section 14575, and its relationship to the Act as a whole, we agree with the trial court that the Department's reading of section 14575 is erroneous." (*Californians Against Waste v. Department of Conservation*, *supra*, 104 Cal.App.4th at pp. 319–320.) The foregoing was the sole issue before the Court of Appeal in *Californians Against Waste*. There was no issue before the trial court or former Associate Justice Callahan and her colleagues as to whether the statement of legislative purpose in section 14501, subdivision (g) or the provisions of section 14530.6, which allow the Attorney General to represent the department under specified circumstances, gives rise to a private cause of action. Therefore, *Californians Against Waste* is not authority for the proposition that writ review is available to plaintiff or that a private right of action exists under the act. (*Palmer v. GTE California, Inc., supra,* 30 Cal.4th at p. 1278; *Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at p. 1081.)

Plaintiff further argues defendants failed to fulfill their section 14501, subdivision (g) duty to provide convenient, efficient, and economical redemption opportunities in that they did not establish certified recycling locations as required by section 14571, subdivision (a). As noted above, section 14571, subdivision (a) provides, "Except as otherwise provided in this chapter, there shall be at least one certified recycling center or location within every convenience zone which accepts and pays the refund value . . . for all types of empty beverage containers . . . ." "Convenience zone" is defined in section 14509.4 as, "The area within a one-half mile radius of a supermarket." However, the department has discretion under specified circumstances to

increase the size of a convenience zone to within a three-mile radius of a supermarket. (§ 14509.4, subd. (b)(1) & (2).) Moreover, the department has discretion to grant *exemptions* from the requirements of section 14571 as set forth in section 14571.8, subdivision (b), which states in part: "The director may grant an exemption from the requirements of Section 14571 for an individual convenience zone only after the department solicits public testimony on whether or not to provide an exemption from Section 14571. The solicitation process shall be designed by the department to ensure that operators of recycling centers, dealers, and members of the public in the jurisdiction affected by the proposed exemption are aware of the proposed exemption."[4]

■   Plaintiff's reliance on section 14571 is unavailing for two reasons. First, with respect to the corporate defendants, plaintiff does not argue section 14571 by itself imposes any direct duty on them to establish certified recycling centers. Instead, plaintiff relies on the purported joint mandatory obligation "to provide convenient, efficient, and economical redemption opportunities" in section 14501, subdivision (g), as the source of a duty on the part of the corporate defendants to establish at least one certified recycling center within every convenience zone. As discussed above, however, section 14501, subdivision (g) does not create any joint mandatory duty to provide recycling opportunities. Therefore, plaintiff cannot rely on section 14571, subdivision (g) to impose on the corporate defendants a duty to establish certified recycling centers. Second, with respect to the department, our Supreme Court has held that a statute creates a mandatory duty sufficient to impose liability on a public entity only when it *requires,* rather than allows, the governmental agency to take a particular action. (*Haggis v. City of Los Angeles, supra,* 22 Cal.4th at pp. 498–499; *Creason v. Department of Health Services, supra,* 18 Cal.4th at pp. 631–633; *Morris v. County of Marin, supra,* 18 Cal.3d at pp. 907, 910.) The Supreme Court has explained, "It is not enough . . . that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion. (*Creason v. Department of Health Services[, supra,]* 18 Cal.4th [at pp.] 631–633.)" (*Haggis v. City of Los Angeles, supra,* 22 Cal.4th at pages 498–499.) Section 14571, subdivision (a) does not *require* that the department establish at least one certified recycling center or location within a one-half mile radius of every supermarket. Section 14571, subdivision (a) states, "*Except as otherwise provided in this chapter, there shall be . . . .*" (Italics added.) The chapter, specifically section 14509.4, subdivision (b)(1) and (2), provides otherwise. Section 14509.4, subdivision (b) provides that the department has discretion to increase a convenience zone otherwise not being served by a certified recycling center or location to within a three-mile radius of a supermarket. (§ 14509.4, subd. (b)(1) & (2).) That is, the department has

---

[4] See footnote 2, *ante,* for the full text of section 14571.8, subdivision (b).

discretion to require at least one certified recycling center be established within a three-mile radius of a supermarket in a rural region rather than within a one-half mile zone. Moreover, under section 14571.8, subdivision (b), the department has discretion to grant an exemption from the requirements of section 14571; that is, to not require a certified recycling center within a convenience zone at all. No cause of action will lie against the department with respect to the placement of certified recycling centers or locations within convenience zones because the act does not *require* the department to take a particular action. The department's obligation to perform the function set forth in section 14571 involves the exercise of discretion.

In her reply brief, plaintiff asserts section 14501, subdivision (g), imposing a joint responsibility to provide redemption opportunities, section 14501, subdivision (a), describing redemption opportunities as including "industry operated recycling centers," and various references in the act to "reverse vending machines" (e.g., §§ 14571, subd. (e), (f), (g), & (h), 14520.5, 14572.5), should be construed together to require beverage manufacturers—here, the corporate defendants—to provide reverse vending machines in recycling centers. We need not discuss this argument at length. It is sufficient to note that it relies on section 14501, subdivision (g), a statement of legislative intent, as establishing the joint mandatory obligation. As we have noted, section 14501, subdivision (g) provides no mandatory duty of the type which can give rise to a right of action.

## C. *Writ Relief*

The trial court found a writ petition would not lie in the absence of a clear, present duty on defendants' part. Because the pertinent facts are undisputed and the issue is one of statutory interpretation, our review of the trial court's decision is de novo. (*Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1253 [15 Cal.Rptr.3d 344]; *Catalina Investments, Inc. v. Jones* (2002) 98 Cal.App.4th 1, 6 [119 Cal.Rptr.2d 256]; *Beverly v. Anderson* (1999) 76 Cal.App.4th 480, 483–484 [90 Cal.Rptr.2d 545].) Plaintiff's writ petition was properly denied. Pursuant to Code of Civil Procedure section 1085, subdivision (a), "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person." Under Code of Civil Procedure section 1086: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." The Supreme Court has held: "The writ will

issue against a county, city or other public body or against a public officer. (*Housing Authority v. City of L. A.* (1952) 38 Cal.2d 853, 869–871 [243 P.2d 515], cert. den. 1952) 344 U.S. 836 [97 L.Ed. 651, 73 S.Ct. 46]; *Hawthorn v. City of Beverly Hills* (1952) 111 Cal.App.2d 723, 731 [245 P.2d 352].) However, the writ will not lie to control discretion conferred upon a public officer or agency. (*Lindell Co. v. Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Faulkner v. Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659].) Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent (*Faulkner v. Cal. Toll Bridge Authority, supra.; Sherman v. Quinn* (1948) 31 Cal.2d 661, 664 [192 P.2d 17]; *Browning v. Dow* (1923) 60 Cal.App. 680, 682 [213 P. 707]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty (*Parker v. Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]). (See generally 3 Witkin, Cal. Procedure (1954), Extraordinary Writs, § 40 et seq., pp. 2520 et seq.)" (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193], fn. omitted; accord, *Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th at pp. 539–540; *Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710]; *Cooper v. Estero Mun. Improvement Dist.* (1969) 70 Cal.2d 645, 650 [75 Cal.Rptr. 777, 451 P.2d 417].)

In *Younger*, for example, the Supreme Court found a clear duty was imposed by law upon the county defendants because a statute unequivocally required a particular action: "[Government Code] section 66801, article VII, subdivision (a) provides that '[e]ach county in California *shall pay* the sum allotted to it by the agency from any funds available therefor . . . .' [Italics added by *Younger*.]" (*People ex rel. Younger v. County of El Dorado, supra,* 5 Cal.3d at p. 491.) Similarly, in *Woodside,* the Supreme Court held a Government Code section requiring the county to meet and confer with an employee association in good faith created a clear and present duty to do so. (*Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th at p. 540.) On the other hand, absent a clear duty imposed by law such as that in *Younger* or *Woodside,* mandamus is not a proper vehicle for resolution of the asserted grievance. (*Cooper v. Estero Mun. Imp. Dist., supra,* 70 Cal.2d at p. 650.) In *Cooper,* the plaintiff failed to allege the defendants had any duty to act in a particular manner. (*Id.* at p. 650.)

Plaintiff asserts section 14501, subdivision (g) imposes a mandatory duty on defendants to jointly provide convenient, efficient, and economical redemption opportunities. Further, plaintiff contends section 14571 entails a mandatory requirement that a convenience zone contain at least one certified recycling center or location. As discussed above, no duty arises under section 14501, subdivision (g). We agree with the trial court that section 14501, subdivision (g) is a general statement of legislative intent that does not

impose any affirmative duty that would be enforceable through a writ of mandate. (See *Municipal Court v. Superior Court* (1993) 5 Cal.4th 1126, 1132 [22 Cal.Rptr.2d 504, 857 P.2d 325]; *Common Cause of California v. Board of Supervisors, supra,* 49 Cal.3d at p. 444.) ■ Also as discussed above, the department has discretion to exempt convenience zones from the certified recycling center or location requirement in section 14571. (§ 14571.8.) A writ of mandate will not lie to control the department's discretion as to establishing certified recycling centers or locations within convenience zones. (*People ex rel. Younger v. County of El Dorado, supra,* 5 Cal.3d at p. 491; *Lindell Co. v. Board of Permit Appeals, supra,* 23 Cal.2d at p. 315; *Faulkner v. Cal. Toll Bridge Authority, supra,* 40 Cal.2d at p. 326.) Absent a clear, present duty on defendants' part, the trial court properly denied plaintiff's mandate petition.

### D. *The Unfair Competition Claim*

Plaintiff argues that even in the absence of a mandatory duty or a private right of action under section 14501, subdivision (g), she has a right to bring an unfair competition claim under Business and Professional Code section 17200. Plaintiff alleges the corporate defendants engaged in fraudulent, unlawful, and unfair business practices and conduct in failing to provide sufficient convenient, efficient, and economical redemption opportunities in violation of section 14501, subdivision (g), resulting in an unacceptably low recycling rate. Plaintiff's reply brief states, "Plaintiff concedes that [section] 14501 (g) is the mainspring of [her] [unfair competition law] claim . . . ." According to plaintiff, this unacceptably low recycling rate violated the Legislature's intent in adopting the act. Plaintiff further alleges defendants deceived consumers into believing such opportunities would be available. The trial court ruled: courts will abstain from unlawful competition claims in the face of a comprehensive administrative process which can address the issue at hand; it therefore should abstain from involving itself in an area addressed by "a comprehensive legislative scheme designed to improve recycling in California"; and it should not "become involved in determining how to meet complex recycling goals the Legislature has entrusted to the [department]." The trial court properly exercised its discretion to abstain from employing the remedies available under the unfair competition law.

■ It is well established that a court of equity will abstain from employing the remedies available under the unfair competition law in appropriate cases. As the Court of Appeal held in a case involving the health care finance industry: "[B]ecause the remedies available under the [unfair competition law], namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them. Where [an unfair competition law] action would drag a court of equity into an area of complex economic [or similar] policy, equitable abstention is appropriate. In such

cases, it is primarily a legislative and not a judicial function to determine the best economic policy." (*Desert Healthcare Dist. v. PacifiCare, FHP, Inc.* (2001) 94 Cal.App.4th 781, 795–796 [114 Cal.Rptr.2d 623]; accord, *People ex rel. Dept. of Transportation v. Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 523 [213 Cal.Rptr. 247, 698 P.2d 150] [billboards]; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 137–138 [62 Cal.Rptr.2d 620] [insurance industry]; *Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 564–565 [53 Cal.Rptr.2d 878] [earthquake insurance]; *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 218–219 [27 Cal.Rptr.2d 396] [bank service fees]; *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1301–1302 [22 Cal.Rptr.2d 20] [health maintenance organization third party liability policies]; *Larez v. Oberti* (1972) 23 Cal.App.3d 217, 221–222 [100 Cal.Rptr. 57] [domestic farmworker protection from illegal alien competition]; *Cobos v. Mello-dy Ranch* (1971) 20 Cal.App.3d 947, 951 [98 Cal.Rptr. 131] [same]; *Diaz v. Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 599 [88 Cal.Rptr. 443] [same]; see *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 596–597 & fn. 2 [71 Cal.Rptr.2d 731, 950 P.2d 1086] (dis. opn. of Brown, J.) [sale of cigarettes to minors].)

In this case, the complex statutory arrangement of requirements and incentives involving participants in the beverage container recycling scheme is to be administered and enforced by the department consistent with the Legislature's goals. For the court at this point to issue restitution and disgorgement orders against the corporate defendants would interfere with the department's administration of the act and regulation of beverage container recycling and potentially risk throwing the entire complex economic arrangement out of balance. The public's need for opportunities to recover its cash redemption value funds and to conveniently recycle its beverage containers is not so great as to warrant judicial interference in the administrative scheme designed to address those needs at this point.

### E. Declaratory Relief

Plaintiff argues she has a right to seek declaratory relief as to the construction of the act and mandamus to compel its enforcement. We disagree. As discussed above, section 14501, subdivision (g) does not impose any mandatory duty on defendants to act. Therefore, plaintiff cannot state a cause of action for declaratory relief as to defendants' rights, duties, and responsibilities under section 14501, subdivision (g).

## IV.  DISPOSITION

The judgment is affirmed. Defendants, the Department of Conservation, Darryl W. Young, Jim Ferguson, Anheuser-Bush, Inc. and Miller Brewing Company, are to recover their costs on appeal from plaintiff, Ferial Shamsian.

Armstrong, J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2006, S142015. Baxter, J., Chin, J., and Corrigan, J., did not participate therein. Kennard, J., Werdegar, J., and Johnson, J., were of the opinion that the petition should be granted.