Filed 12/12/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LOS ANGELES UNIFIED SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | D073797 <br><br><br> (Super. Ct. No. 37-2017-00013190-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Evans & Page and Corey Allen Evans, for Plaintiffs and Appellants.

Gutierrez, Preciado & House, Calvin House and Arthur C. Preciado, for Defendant and Respondent Los Angeles Unified School District.

Artiano Shinoff, Paul V. Carelli, IV and Justin C. Manganiello, for Defendant and Respondent Poway Unified School District.

INTRODUCTION

Physicians Committee for Responsible Medicine (Physicians Committee) filed a verified petition for writ of mandate seeking to prohibit local educational agencies Los Angeles Unified School District (LAUSD) and Poway Unified School District (PUSD) from serving processed meats in their schools and directing them to modify wellness policies to reflect the goal of reducing or eliminating processed meats. The local educational agencies demurred, arguing they were under no statutory obligation to reduce or eliminate processed meat from schools. The trial court granted the demurrers. Physicians Committee appeals, contending the local educational agencies' failure to reduce or eliminate processed meat from schools abuses their discretion in developing statutorily-mandated, local wellness policies. We disagree and affirm the judgment.

BACKGROUND

After exhausting administrative remedies, Physicians Committee filed a verified petition for writ of mandate. Following an initial round of demurrers, Physicians Committee filed a First Amended Verified Petition (FAVP) naming three defendants: the California Department of Education (CDE),[1] LAUSD, and PUSD. Its goal is to prevent LAUSD and PUSD "from serving processed meat to children due to the recognized association between eating processed meat (e.g. hotdogs, sausages, luncheon meat, bacon, and turkey bacon) and developing cancer, diabetes, and cardiovascular disease."

_____

[1] The CDE is not a party to this appeal. Accordingly, the facts are limited to the allegations raised against LAUSD and PUSD.

2

A. *The FAVP Allegations*

Paragraph 93 of the FAVP alleges that under the Child Nutrition and WIC Reauthorization Act of 2004, and the Healthy, Hunger-Free Kids Act of 2010, local educational agencies have a duty to issue local wellness policies that meet minimum standards by including goals and basing the wellness policies on evidence and dietary guidelines. Paragraph 95 of the FAVP alleges the local educational agencies serve processed meats, and paragraph 96 alleges they fail to identify the serving of processed meat as a problem or to discuss how and when processed meat will be reduced or phased out of the school menus. Paragraph 97 alleges these failures violate the Healthy, Hunger-Free Kids Act of 2010 and violate the school districts' local wellness policies. Paragraph 98 of the FAVP alleges PUSD violates its own wellness policy of promoting optimal health and supporting student health and wellness.

The petition seeks injunctive and declaratory relief, directing LAUSD and PUSD to stop serving meat to children in school meals and to modify their wellness policies to remove processed meat from school lunches.

B. *The Demurrers*

LAUSD and PUSD separately demurred to the FAVP, arguing Physicians Committee did not allege a clear, mandatory, statutory duty that they failed to perform. Physicians Committee opposed the demurrers.

At the hearing, Physicians Committee claimed that federal law requires schools to discuss and identify problem foods, based on evidence and the guidelines. It reasoned that it was undisputed that processed meat is a problem food based on scientific literature

3

identified in the petition; thus, the absence of any discussion about it in the wellness policies demonstrated a failure to comply with federal law.

The court asked Physicians Committee to point to a statute that requires a written discussion of such foods to appear in local wellness policies, but Physicians Committee never did.

The court granted the demurrers without leave to amend and entered a judgment of dismissal. This appeal timely followed.

DISCUSSION

I.

Requests for Judicial Notice

Physicians Committee renews its opposition to the requests for judicial notice filed by LAUSD and PUSD in support of their demurrers. The majority of Physicians Committee's arguments center around procedural defects it contends should have prevented the trial court from granting the requests. We review judicial notice rulings for abuse of discretion (*CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520), and we conclude the trial court did not abuse its discretion by granting the requests for judicial notice.[2]

---

[2] LAUSD separately filed an unopposed request for judicial notice as part of the appeal, citing Evidence Code section 459. It seeks judicial notice of the same documents of which it sought judicial notice before the trial court. We deny this request as unnecessary.

4

LAUSD filed a request for judicial notice, citing Evidence Code section 452, subdivisions (a) and (c). The request stated it was attaching "Exhibits 1 through 8," but it listed and attached nine documents. The ninth document was the LAUSD local wellness policy.

PUSD also requested judicial notice. Its request cited Evidence Code section 452 and noted the relevant documents were regulations and legislative enactments issued under the authority of a governmental entity or consisting of official acts of that entity. It identified its Board Policy 5.31 (School Wellness Policy) and Administrative Procedure 5.31.1 (School Wellness Policy), and the CDE Nutrition Services Division Decision of Appeal in the Physicians Committee matter (CDE Decision). PUSD attached the documents to the memorandum in support of its demurrer, not to the request for judicial notice.

Physicians Committee challenges LAUSD's request for judicial notice on three grounds. First, it contends LAUSD's notice of demurrer violated Code of Civil Procedure section 1010 because it did not state it was based on the request for judicial notice or on facts of which the court could take judicial notice. However, LAUSD's notice of demurrer substantially complied with Code of Civil Procedure section 1010 because it apprised Physicians Committee of the documents upon which it would rely for its demurrer by serving those documents with the related notice of motion and motion. (See *Broderick v. Cochran* (1912) 18 Cal.App. 202, 204.)

Next, Physician's Committee contends LAUSD's request for judicial notice violated Rule of Court number 3.1113(l) because, it alleges, LAUSD attached its

5

wellness policy to the request for judicial notice without mentioning that exhibit in the request. However, LAUSD's request for judicial notice complies with California Rule of Court number 3.113(l) because it asks the court to take judicial notice "of the following documents" and identifies the wellness policy by name on the list of items it supplied. Although it states that "the following documents . . . are attached as Exhibits 1 through 8 hereto," it lists nine documents, and nine documents are attached. Thus, the typographical error is not procedurally fatal.

Finally, Physicians Committee argues that neither LAUSD nor PUSD provided a specific argument for why their attachments, including their wellness policies, fell within Evidence Code section 452, subdivisions (a) and (c).

The Constitution and the Legislature have ceded substantial discretionary control over education to local school districts. (Ed. Code,[3] §§ 35160, 35160.1, subd. (b), 35161; *Governing Bd. of Ripon Unified School Dist. v. Commission on Professional Competence* (2009) 177 Cal.App.4th 1379, 1385.) Thus, school board actions can be official acts, and school board policies and regulations may be recognized by judicial notice. (Evid. Code, § 452, subds. (a) & (c).) Physicians Committee does not actually dispute that the adoption of wellness policies are official acts of a legislative agency. Their adoption is appropriately judicially noticed under Evidence Code section 452, subdivision (c). Physicians Committee also does not argue that the statutes and regulations it referenced in its FAVP and which LAUSD attached to its request for

---

[3] Further section references are to the Education Code unless otherwise specified.

judicial notice are not properly placed within Evidence Code section 452, subdivision (a). The trial court did not abuse its discretion when taking judicial notice of these documents. Accordingly, we likewise take judicial notice over the statutory and regulatory materials, as well as the wellness policies. (Evid. Code, § 459.)

Physicians Committee argues additionally that judicial notice of the CDE Decision was improper because it only supports PUSD's position if its contents are considered for their truth. We need not reach a conclusion as to whether its consideration was an abuse of discretion because we affirm the court's judgment independently and without reference to the CDE Decision.[4]

## II.

## Demurrers

At issue is whether the duties alleged in the FAVP were discretionary or mandatory, and if discretionary whether the school districts abused their discretion. We conclude the FAVP fails to identify any mandatory duties with which the local educational agencies failed to comply. We further conclude the FAVP does not adequately allege an abuse of discretion, and we affirm the judgment.

## A.

### *Legal Principles*

---

[4] Although the trial court granted judicial notice of the CDE Decision and identified it as notable, it is not clear that the trial court relied on this document in reaching its conclusion.

7

"A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code of Civ. Proc., § 1086.)" (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 490-491.)

"The petitioner must demonstrate the public official or entity had a ministerial duty to perform, and the petitioner had a clear and beneficial right to performance." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700 (*AIDS Healthcare*).) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion . . . is the power conferred on public functionaries to act officially according to the dictates of their own judgment. [Citation.]' [Citations.]" (*Ibid.*) "A statute is deemed to impose a mandatory duty on a public official only if the statute affirmatively imposes the duty and provides implementing guidelines." (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 510 (*O'Toole*).)

"[A]bsent a clear duty imposed by law . . . mandamus is not a proper vehicle for resolution for the asserted grievance." (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 640 (*Shamsian*).) Moreover, "[m]andamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it

8

to exercise its discretion in some manner. [Citation.]" (*AIDS Healthcare*, *supra*, 197 Cal.App.4th at pp. 700-701.) Finally, " '[w]hether a particular statute is intended to impose a mandatory duty . . . is a question of statutory interpretation for the courts.' [Citation.]" (*O'Toole*, *supra*, 140 Cal.App.4th at p. 510.)

On appeal from a motion for a writ, we resolve questions of law, including those of statutory interpretation, de novo. (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 103, citing *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 109.) Because the dismissal of the petition followed the trial court's granting of a demurrer, we consider the properly-pleaded material facts (*AIDS Healthcare*, *supra*, 197 Cal.App.4th at p. 698), as well as matters that may be judicially noticed. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Additionally, we will affirm a judgment of dismissal after a demurrer has been sustained without leave to amend if doing so is proper on any ground stated in the demurrer, regardless of whether the court acted on that ground. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

B.

*Ministerial Duties*

Physicians Committee contends the court's determination that the local educational agencies did not have a ministerial duty was improper because it did not consider all the mandatory duties alleged in the FAVP. Our independent review of the allegations in the FAVP and the corresponding law confirms the trial court's conclusion.

As an initial observation, Physicians Committee brought its petition for a writ of mandate "to prevent the Los Angeles Unified School District ('LAUSD') and the Poway

9

Unified School District ('PUSD') from serving processed meat to children due to the recognized association between eating processed meat (e.g., hotdogs, sausages, luncheon meat, bacon, and turkey bacon) and developing cancer, diabetes, and cardiovascular disease." However, as we discuss more fully below, none of the statutes identified by the Physicians Committee requires schools to eliminate or reduce the amount of processed meats or to label or identify processed meats as unhealthy; therefore, Physicians Committee fails to meet the first requirement for issuance of a writ of mandate.

1. *National School Lunch Program*

The FAVP cites the National School Lunch Program as part of its description of the statutory framework that controls school food service. The National School Lunch Program, title 42 United States Code section 1758, requires lunches served by schools participating in the program to meet minimum nutritional requirements prescribed by the Secretary of Agriculture; those requirements are based on tested nutritional research. (42 U.S.C. §§ 1758(a)(1)(A), 1752.) Although the FAVP alleges California schools participate in the National School Lunch Program, it does not allege the schools violate any particular statutory requirement contained in this law, including meeting nutritional requirements.

2. *Healthy, Hunger-Free Kids Act of 2010*

The Healthy, Hunger-Free Kids Act of 2010 is a reauthorization of the Child Nutrition Act. (Pub.L. No. 111-296 (Dec. 13, 2010) 124 Stat. 3183 (HHFKA).) Among other things, it gives the U.S Department of Agriculture the authority to set science-based nutrition standards for food sold in schools. (HHFKA, Pub.L. No. 111-296, § 208 (Dec.

10

13, 2010) 124 Stat. 3221; 42 U.S.C. § 1758(a)(1).) It also requires all participating local educational agencies to establish a local school wellness policy (HHFKA, Pub.L. No. 111-296, § 204 (Dec. 13, 2010) 124 Stat. 3216; 42 U.S.C. § 1758b(a)) and to permit parents, students, school food authority representatives, P.E. teachers, school health professionals, school administrators, the general public, and the school board to participate in the development, implementation, and periodic review of the wellness policy. (HHFKA, Pub.L. No. 111-296, § 204 (Dec. 13, 2010) 124 Stat. 3217; 42 U.S.C. § 1758b(b)(4).) The HHFKA provides for local discretion, requiring local educational agencies to use guidelines promulgated by the Secretary of Agriculture "to determine specific policies appropriate for the schools" under their jurisdiction. (HHFKA, Pub.L. No. 111-296, § 204 (Dec. 13, 2010) Stat. 3217; 42 U.S.C. § 1758b(c).)

This law establishes a ministerial duty to develop wellness policies. (HHFKA, Pub.L. No. 111-296, § 204 (Dec. 13, 2010) 124 Stat. 3216; 42 U.S.C. § 1758b(a).) However, it does not detail what must be included in the wellness policies other than a directive to use federal guidelines, which presumably take into consideration science-based nutrition standards, as required by law. (42 U.S.C. §§ 1758(a)(1) and 1758b(c).) The law does not direct schools to address the reduction or elimination of processed meats. The law does not mandate obedience without regard to a local educational agency's own judgment. It even includes a provision requiring local discretion (42 U.S.C. § 1758b(c)), making clear it does not create a mandatory duty to address the reduction or elimination of processed meat. (See *AIDS Healthcare*, *supra*, 197 Cal.App.4th at pp. 700-701.) Because a writ cannot be used to control discretion that has

11

been conferred on a public agency, this law does not provide a statutory basis for the petition. (*Shamsian*, *supra*, 136 Cal.App.4th at p. 640.)

Paragraph 97 alleges that LAUSD and PUSD violate the HHFKA by "failing to identify processed meat as a problem" and by "fail[ing] to discuss how and when processed meat will be reduced and/or phased out of school meals." However, accepting this factual allegation as true does not provide a basis for the writ because there is no mandatory obligation to discuss how and when processed meat will be reduced and/or phased out.

Similarly, paragraph 25 of the FAVP alleges the National School Lunch Act requires school meals to reflect the latest Dietary Guidelines for Americans. However, Physicians Committee does not allege that the guidelines prohibit eating processed meat or require its reduction in schools. Nor is there an allegation that the school meals fail to reflect the dietary guidelines or fail to comply with the nutritional standards promulgated by the Department of Agriculture. (See 42 U.S.C. § 1758(a)(1).) Moreover, because nothing in the HHFKA requires the districts to identify processed meat as a problem or to discuss how and when processed meat will be reduced or eliminated, the absence of this discussion from the substance of the wellness policies does not constitute a violation of the local educational agencies' ministerial duties under this act.

3. *Child Nutrition and WIC Reauthorization Act of 2004*

The Child Nutrition and WIC Reauthorization Act of 2004 amended the National School Lunch Act (42 U.S.C. § 1751 et seq.) and the Child Nutrition Act of 1966 (42 U.S.C. § 1771 et seq.) to simplify programs, improve management, and reauthorize

12

programs. (Pub.L. 108-265 (June 30, 2004) 118 Stat. 729, [204].) This act requires local educational agencies participating in the National School Lunch Act or the Child Nutrition Act of 1966 to establish a local school wellness policy that "(1) includes goals for nutrition education, physical activity, and other school-based activities that are designed to promote student wellness in a manner that the local educational agency determines is appropriate; [¶] (2) includes nutrition guidelines selected by the local educational agency for all foods available on each school campus . . . with the objectives of promoting student health and reducing childhood obesity; [¶] (3) provides an assurance that guidelines for reimbursable school meals shall not be less restrictive than regulations and guidance issued by the Secretary of Agriculture . . . ; [¶] (4) establishes a plan for measuring implementation of the local wellness policy . . . ; and [¶] (5) involves parents, students, and representatives of the school food authority, the school board, school administrators, and the public in the development of the school wellness policy." (HHFKA, Pub.L. 108-265, § 204, subd. (a)(1)-(5) (June 30, 2004) 118 Stat. 780-781.)

Although the Child Nutrition and WIC Reauthorization Act of 2004 requires local educational agencies to establish wellness policies that have the goals of promoting health and reducing obesity, the specific details of those policies are discretionary. (Child Nutrition and WIC Reauthorization Act of 2004, § 204, subd. (a)(1).) Nothing cited by Physicians Committee requires schools to promote health by reducing or eliminating processed meats on school campuses. The first requirement permits local

educational agencies to determine goals for education and activities in a manner appropriate to the individual local educational agency, a discretionary duty.

The second requirement is addressed in the FAVP, which alleges that LAUSD and PUSD "have a clear public duty to issue local wellness policies that meet the minimum legal standards of promoting health and addressing childhood obesity by including specific goals for nutrition promotion and education and basing said policies on evidence and dietary guidelines." However, this too permits discretion because the local educational agencies can determine the manner they use to achieve the objectives; they are not required to do so by reducing or eliminating processed meats. There are no allegations in the FAVP that LASUD or PUSD fail to fulfill the requirements of this act, only that the school districts did not do so in the particular way Physicians Committee would prefer, i.e., by banning or reducing the distribution of processed meats. Accordingly, this statute does not provide a basis for a ministerial duty that has not been performed.

4. *California Education Code*

Finally, the FAVP identifies several sections of the Education Code that it contends create mandatory duties for the local educational agencies. We address these below.

a. Section 49530

Section 49530 of the Education Code states, "The Legislature finds that . . . the proper nutrition of children is a matter of highest state priority. . . ." (§ 49530, subd. (a)(1).) Moreover, because of the relationship between nutritious food and the

14

capacity to develop and learn, students at all income levels should be taught principles of good nutrition to help develop "the proper eating habits essential for lifelong good health and productivity." (§ 49530, subds. (a)(2) & (3).) Accordingly, the Child Nutrition Act of 1974 was established to obligate schools and child development programs to provide for the nutritional needs and education of students. (§ 49530, subd. (b).)

However, a statute's statement of legislative intent does not create any affirmative duty that is enforceable via writ of mandate. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 444 (*Common Cause*) [declaration of intent cannot be viewed as independently creating substantive duties]; *Shamsian*, *supra*, 136 Cal.App.4th at pp. 640-641.) Thus, this statute does not provide a basis for this suit.

b. Section 49531

Section 49531 allows local educational agencies to apply to their state departments of education for federal and state funds in order to provide "a nutritionally adequate breakfast or lunch, or both" to students. (§ 49531, subd. (a).) It defines nutritionally adequate breakfasts as those that qualify for reimbursement under the most current meal patterns defined by federal regulations, incorporate the United States Dietary Guidelines for Americans, and meet a minimum of one-fourth of the Recommended Dietary Allowance set by the National Research Council.[5] (§ 49531, subds. (a) & (b).) A nutritionally adequate lunch must qualify for reimbursement under federal regulations,

---

[5] The CDE is tasked with developing and maintaining nutrition guidelines for breakfast and lunch that are consistent with the meal patterns defined by federal regulation. (§ 49531.1.)

must incorporate the United States Dietary Guidelines for Americans, and must meet one-third of the Recommended Dietary Allowance set by the National Research Council. (*Ibid.*)

Section 49531 establishes a duty for school districts that use the federal and state funds to provide breakfasts and lunches for qualifying students, but the duty it creates is one of nutritional adequacy. Thus, local educational agencies that apply for state and federal funds comply with the duties created here when they serve nutritionally adequate food. Notably, state and federal guidelines include the option of serving lean meat. (Cal. Code Regs., tit. 5, § 15558; 7 C.F.R. § 210.10; 7 C.F.R. § 220.8.)

Although the FAVP alleges LAUSD and PUSD receive funding from the CDE for meals that satisfy the National School Lunch Program, it does not allege LAUSD or PUSD neglect to provide nutritionally adequate meals. It also does not allege the school districts fail to comply with state and federal nutrition guidelines, fail to meet the minimum required Recommended Dietary Allowances, or fail to incorporate the United States Dietary Guidelines for Americans in their food service programs. Thus, the FAVP does not state a cause of action upon which relief can be granted against the local educational agencies under this portion of the Education Code.[6]

---

6   The FAVP alleges the CDE is out of compliance with sections 495901 and 49531.1. The allegations against the CDE are not the subject of this appeal, and we do not address their substance.

16

c. Section 32060

The FAVP also references part 19, article 6 of the Education Code, which addresses toxic art supplies in schools. Section 32060 offers the Legislature's finding and declaration that "art supplies which contain toxic substances or which are potential human carcinogens pose a significant danger to the health and safety of school children," who "are not sufficiently protected by present health laws" because they fail to require labels for materials which may be seriously harmful. (§ 32060, subd. (a).)

This law contains mandatory, prohibitory language; it prohibits schools from purchasing art or craft materials containing toxic substances for use by first through sixth graders, and it prohibits the purchase of art or craft materials containing toxic substances for use by seventh through twelfth grade students unless the materials are properly labeled.[7] (§ 32064, subds. (a) & (b).)

The FAVP cites to this portion of the Education Code to define toxic substances causing chronic illnesses and to include human carcinogens within the definition of toxic substances. It then explains that processed meats are a human carcinogen that can increase risk for cancer.[8] Physicians Committee implies because schools are prohibited

---

[7]     There are exemptions which allow the purchase of the art or craft supplies if the chronically toxic carcinogenic or radioactive substance contained in the product cannot be ingested, inhaled, or otherwise absorbed into the human body. (§ 32064, subd. (c).) Otherwise, art or craft materials that contain at least one percent of a toxic substance causing chronic illness must have affixed warning labels containing information "on the health-related dangers of the art or craft material." (§ 32065, subd. (b).)

[8]     There are also allegations that processed meats increase the likelihood of diabetes, high blood pressure, cardiovascular disease, and obesity.

from purchasing art supplies with toxic substances, they must also be prohibited from purchasing food that contains human carcinogens or must be required to provide warning labels. Although the FAVP treats section 32060 as prohibiting the purchase of any toxic substance causing chronic illness unless labeling standards are met, subsection (b) references the definitions provided in subdivision (a), which are specific to art or craft materials. (§ 32064, subds. (a) & (b).)

We read article 6 to apply to school art supplies and nothing more. Sections 32064 and 32065 repeatedly reference art supplies or craft materials, not food (see § 32064), and the legislative intent is specific to art supplies (§ 32060, subd. (a)). Accordingly, this section of the Education Code does not supply a mandatory statutory duty for school nutritional policies.

5. *Local Wellness Policies*

Paragraph 97 of the FAVP alleges that LAUSD and PUSD violate their local wellness policies, but it does not contain any allegations identifying an action LAUSD has taken in violation of its wellness policy. Nor does it put forth any argument in its briefing that challenges LAUSD with being out of compliance with its own wellness policy. Accordingly, the FAVP does not state a cause of against LAUSD on this basis.

Paragraph 97(b) of the FAVP alleges the PUSD wellness policy "states that food available to children should promote 'optimal health' and its goal and purpose is to support 'student health and wellness.' " It also alleges: "PUSD served processed meat, which causes negative health effects [], and PUSD continues to serve processed meat

18

despite being aware of the negative health effects.  PUSD is not providing food that promotes a child's 'optimal health.' "

Physicians Committee contends PUSD violated its wellness policy to promote optimal health and support student health and wellness because it serves processed meat and does not explain how it will reduce the amounts of processed meats it will serve in the future.

The wellness policy language quoted in the FAVP does not mandate any particular action on the part of PUSD.  It states that food should promote optimal health, not that it must.  Moreover, this language is a statement of intent, and such a statement cannot be viewed as creating a substantive duty.  (See, e.g., *Common Cause*, *supra*, 49 Cal.3d at p. 444 [declaration of intent cannot be viewed as independently creating substantive duties]; *Shamsian*, *supra*, 136 Cal.App.4th at pp. 640-641.)  At best, this language creates a discretionary duty for PUSD to promote optimal health in the way it sees fit.

Because the FAVP does not identify ministerial duties which it alleges have been violated, we conclude a writ is not appropriate.  "Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner.  [Citation.]" (*AIDS Healthcare*, *supra*, 197 Cal.App.4th at pp. 700-701.)  Although Physicians Committee repeatedly points to its allegation that the wellness policies fail to discuss how and when processed meat will be reduced and/or phased out of school, absent a showing that the wellness policies are obligated to do so, this cannot be a basis upon which relief can be granted.  (See *ibid.*)

19

D.

*Abuse of Discretion*

Physicians Committee contends that even if LAUSD and PUSD were exercising discretion, their actions abused discretion. The crux of Physicians Committee's argument is that LAUSD's and PUSD's wellness policies are irrational because the school districts serve processed meat to children, and this irrationality can only be challenged by evidence which is not available for consideration at the demurrer stage because it would require review of the entire administrative record.

A traditional writ may be appropriate to correct an abuse of discretion, and it can force a particular action if the law clearly establishes a right to the particular action sought. (*Miller Family Home, Inc. v. Department of Social Services* (1997) 57 Cal.App.4th 488, 491.) "It is well-settled in mandamus proceedings (Code Civ. Proc., § 1085) that the party seeking review 'must make some showing that the body invested with discretion has acted arbitrarily, capriciously, fraudulently, or without due regard for his rights and that the action was prejudicial to him. [Citations.]' [Citations.]" (*Huntington Park Redevelopment Agency v. Duncan* (1983) 142 Cal.App.3d 17, 25.)

Physicians Committee focuses on a federal regulation that requires schools participating in the National School Lunch Program and/or Breakfast Program to establish a wellness policy that ensures food and beverages made available on school campuses are consistent with applicable minimum federal standards. (7 C.F.R. § 210.31(a).) The regulation requires local educational agencies to "review and consider evidence-based strategies and techniques." (7 C.F.R. § 210.31(c)(1).)

20

Physicians Committee argues that a reviewing court must ensure the agency " ' adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute.' [Citation.]" (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1786.) It further argues that to do so, a court must consider the administrative record before the agency at the time of the rule-making.

The FAVP does not directly allege the local educational agencies failed to consider evidence-based strategies in developing their wellness policies. It does not seek review of the local educational agencies' processes at all. It asks the court to direct the local educational agencies to stop serving processed meat to children in schools and to require LAUSD and PUSD to modify their wellness policies to remove processed meat from school lunches.

Physicians Committee contends that a wellness policy drafted after consideration of evidence-based strategies and techniques could not rationally decide to serve processed meats. We disagree that no rational person could have reviewed evidence-based strategies and nonetheless decided to serve processed meats or to omit reference to its reduction in a wellness policy. For example, the National School Lunch Program requires the use of science-based nutritional standards and tested nutritional research (42 U.S.C. § 1758(a)(1)), but the related regulations do not prohibit processed meats or even require or recommend schools reduce use of processed meats over current amounts (see 7 C.F.R. § 210.10; 7 C.F.R. § 220.8).

21

The petitioner bears the burden of showing an amendment could cure the defect in the pleading.  (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081).  Physicians Committee offers in its appellate reply brief to amend the FAVP to include the words "arbitrary and capricious" or "abuse of discretion." This argument is not properly before us because it was not included in the opening brief.  (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.)  Even assuming it were, such an amendment would be insufficient because it would not add factual allegations, and we disregard legal conclusions in reviewing the adequacy of the petition.  (See *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

Given the presumption that agencies have performed their official duties (Evid. Code, § 664) and the lack of any direct allegation to the contrary, we conclude there is no basis for the claim the local educational agencies abused their discretion here.

DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents on appeal.


                                                                    HUFFMAN, J.

WE CONCUR:



McCONNELL, P. J.



GUERRERO, J.